Gerald D. Lane Jr., CA # 352470
E-mail: gerald@jibraellaw.com
The Law Offices of Jibrael S. Hindi
1515 NE 26th Street
Wilton Manors, FL 33305
Phone: (754) 444-7539

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MANUEL Q. JUAREZ,** *individually and on behalf of all those similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>**THE GOLF WAREHOUSE LLC,**<br><br>Defendant. | **Case No.:** 2:26-cv-03947-SB-RAO<br><br>**Hon. Stanley Blumenfeld, Jr**<br><br>**DECLARATION OF GERALD D. LANE, JR. IN RESPONSE TO THE COURT'S JULY 15, 2026 ORDER** |

I, Gerald D. Lane, Jr., declare as follows:

I am an attorney duly licensed to practice law in California and admitted to practice before this Court. I submit this declaration in response to the Court's Order dated July 15, 2026 (Dkt. No. 12), which directs me to address: (1) the steps I have taken to prosecute this case; (2) my procedures for ensuring that I diligently prosecute all of the cases I file in this District; and (3) any prior Orders to Show Cause ("OSCs") re sanctions or for lack of prosecution in cases I have filed in this District, identifying each such case, the nature of the OSC, and its

outcome. I have personal knowledge of the facts stated herein and, if called to testify, could and would testify competently to them.

**ITEM 1: STEPS TAKEN TO PROSECUTE THIS CASE**

Defendant The Golf Warehouse LLC was served on April 16, 2026. My office received an email from my process server containing the return of service confirming completion of service. However, no task was created in our case management system at that time to file that return of service with the Court, and it was not filed until after this Court's Order to Show Cause issued on July 15, 2026, at which point I immediately located and filed it. Dkt. No. 11.

Because the return of service had not been filed, the deadline for Defendant to respond had not been calendared or calculated by our office. As a result, I did not become aware that Defendant's response deadline of May 7, 2026, had passed without an answer until I filed the return of service in response to this Court's Order to Show Cause. On July 17, 2026, Plaintiff filed a Request for Default to continue moving this case forward.

As discussed further below, I have corrected this specific gap and other gaps in our case management system. Our current case management system now includes defined litigation phases, and moving a case into that phase generates a task requiring specific action necessary for that litigation phase.

## ITEM 2: PROCEDURES FOR DILIGENT PROSECUTION OF CASES

### Tracking Cases Overall

***Gap – Manuel Spreadsheet Tracking & Email Based Tasks***

Under our prior case management system, case tracking was manually maintained on a spreadsheet, which depended on team members to affirmatively enter and update each case's status by hand. As our caseload grew, I identified several specific, recurring gaps in that manual approach. Staff turnover compounded each of the gaps described above during the period in which case tracking depended on a manually maintained spreadsheet, because institutional knowledge about a given case's status often resided with the individual handling it rather than in a centralized system. Further, many tasks were given over email; there lacked a centralized system for all tasks with assignees that could be tracked with ease at volume. The measures described below were not implemented all at once. As each correction was made, new gaps appeared, and actions were taken to close those new gaps. For example, email follow ups worked for a time but began to show new issues. Each of these measures reduced, but did not eliminate, the underlying risk, because each still depended, in some respect, on manual input and action, rather than the system itself requiring and tracking the necessary next step.

***Correction - Case Phases with Automated Tasking & Global Task Visibility***

With our current system, there is a calendar view that shows all litigation phases for open cases and open tasks for the team. I can view upcoming tasks and view when a task is late. Additionally, I set the deadlines for tasks earlier than the Court's deadline and place a note in the task with the actual Court deadline. This is a safety feature that even if the task is "late," that "tardiness" can be resolved prior to the Court's deadline. Further, there are distinct litigation phases. As explained in more detail below, when each litigation phase changes, there is a task created for a team member to complete the task required for that litigation phase. Ensuring that the litigation phase is changed is a layered check and balance system where we have a dedicated email address (service@jibraellaw.com) where one team member's primary role is to make sure the litigation phases are changed and tasks are being updated. My role is to be the final check to make sure phases are changed and tasks are updated or complete.

Under the current system, tasks are assigned within the system itself and can be reassigned immediately if the team member responsible for a case leaves the firm or is otherwise unavailable. Testing of this system was conducted in late June. This system was implemented in early July prior to the Court's Order once our team's technological skill allowed us to incorporate a system like this. New

cases filed are entered into this system. I believe that the current system will greatly reduce any OSCs. One caveat is that not every case filed prior to the system implementation has been added yet. Thus, as an additional step to this Order to Show Cause Response is, after submission of this declaration, I will review any open cases within this district and make sure that they are all added to the current system.

**<u>Tracking Service</u>**

***Gap – 90-day deadline not tracked***

At the volume of cases our office handles, effectuating service on all defendants inherently takes time, and a sometimes a defendant cannot be served. Under our prior system, once a summons was issued, there was no uniform follow-up task prompting our office to check on the status of service before the 90-day deadline arrived. As a result, a case in which service was proving difficult could reach the 90-day mark with no interim opportunity to identify and address the problem before an Order to Show Cause issued.

***Correction – Service Steps Tracked with Visible Tasks***

Under the current system, when a case is filed, there is a task generated to check on the issuance of the summons and send the case for service if issued. If a week goes by without a summons issued, we will see an overdue pending task, which will prompt us to check on any issues with summons issuance. Once the

summons is issued and the case is served, the litigation phase will be changed to "Waiting on Service," which will create a task for the team member to follow up with the process server on status if the case has not been served within 30 days. This stage is important because when a team member gets to the task, they will be able to see any issues with service well before the 90-day deadline.

**Process Server**

***Gap – Process Server Issues***

When I first started with the firm, most of our cases were Florida-based. Our firm used the same process server for its Florida filings for a long time, predating my arrival at the firm. That process server was well-suited to Florida service and had performed that work at a high level. As our practice expanded to include California litigation, our firm continued using that same process server for California filings. After I began seeing service-related issues in my California matters, I identified that this same process server, while reliable in Florida, its system was not as well-prepared to handle the requirements of service in California. For example, I discovered that our former process server would carry out service and post confirmation to a separate portal on its website, but there usually was no email to our firm indicating that service was complete. Additionally, if there were issues with service, the notes would go to the separate

portal, not to our emails. Thus, we were unaware of many service issues or signed proofs of service.

***Correction – Failed attempts to cure issues lead to a new process server***

Before making a change, I raised these issues directly with the former process server and worked with them over a period of time in an effort to resolve the specific problems I was seeing, given our long working relationship on our firm's Florida matters. When those efforts did not result in the improvement needed for our California caseload, I identified and tested an alternative process server. Once that testing showed improved results, I sought and obtained approval from the firm to use that new process server on a full-time basis for California matters going forward. Since making that change, I have observed improvement in the timeliness and reliability of service, including proactive status updates to our emails on the progress of service that our prior process server did not provide.

**Return of Service**

***Gap – Proof of Service not Readily Obtainable***

Under the prior system, our office would not get a notification that the return of service was ready for filing. It required manually going into a separate portal on our process server's website to obtain the return of service.

***Correction – Proof of Service Sent Via Email***

Under the current system with our new process server, we receive an email whenever a defendant is served. At this point, the case phase would change to "Served, Waiting on Answer," which creates a task to file the return of service the same day and a task to check to see if the defendant answered 21 days later.

**<u>Tracking Stipulations</u>**

***Gap – Answer Deadline not updated after a Stipulation***

Even where a response deadline had initially been correctly tracked, if a defendant subsequently filed a stipulation to extend that deadline, updating the tracked date would require setting a reminder on the new docket entry email for the stipulation. Sometimes, that reminder would not be set. And occasionally, the reminder may not have been addressed before an OSC is issued.

***Correction – Updating the task in our current case management system***

Under our current system, this risk is addressed through layered review rather than a single point of failure. First, the initial task to follow up on if the defendant answered has a note to update the deadline if the defendant requested a stipulation. So, when the team member gets to the task on their calendar, they would look at the docket to see if the defendant answered, if the defendant filed a stipulation, the team member would update the deadline to reflect the

defendant's new deadline. If a team member forgets to do this, I would see on my nightly review that the task is still there for the day and update it myself or ensure that the team member does it.

**<u>Request for Default</u>**

***Gap – Request for Entry of Default Not Uniformly Tasked***

Under our prior system, once a defendant's response deadline passed without an answer, there was no uniform process specifically requiring a team member to check whether entry of default under Federal Rule of Civil Procedure 55(a) was appropriate and to request it. This depended on specific recognition that the deadline had passed and affirmatively deciding to seek default, rather than the system prompting that decision at the appropriate time. In some matters, request for entry of default was delayed as a result, or a defendant's late appearance mooted the need for it before it was pursued without a corresponding update to the Court.

***Correction – Answer Deadline Monitoring Task***

Under our current system, when a case reaches the "Served – Waiting on Answer" phase, a task is generated to check 21 days after service whether the defendant has answered. If no answer has been filed, that task requires the responsible team member to request entry of default at that time, rather than leaving that determination to be made only if and when we happen to notice the

deadline has passed. Once the litigation phase moves to "Motion for Clerk's Default," a task is generated the same day for the team member to file the request and declaration.

**<u>Motion for Default Judgment</u>**

***Gap – Default Judgment Deadline Not Consistently Tracked Once Default Was Entered***

In several matters, a default was entered by the Clerk, but a motion for default judgment was not filed for an extended period thereafter. It does not appear that Rule 55 or this Court's Local Rules impose a specific deadline for filing a motion for default judgment following entry of default; however, this Court's Local Rules recognize that matters pending for an unreasonable period without action may be dismissed for want of prosecution. *See* L.R. 41-1. In each such instance, our practice upon a defendant's default has been, and remains, to attempt to reach the defendant directly to resolve the matter, often resulting in a resolution without the cost and delay of proceeding to judgment, which frequently benefits the client more than a judgment against a non-appearing defendant. However, under our prior system, this outreach was not uniformly paired with an internally tracked deadline for filing the motion for default judgment if that outreach did not result in a timely resolution. So the outreach period remained open-ended and, in some matters, extended longer than it should have.

***Correction – Default Entered Phase with Automated Deadline***

Under our current system, once a default is entered, the case phase changes to "Motion for Default Judgment" which generates a task requiring the motion for default judgment to be filed. This task appears on the calendar regardless of whether outreach to the defendant is ongoing, so pursuing a resolution no longer creates a risk that this internal deadline will lapse unaddressed. If a resolution is reached with the defendant before that deadline, the team member updates the case phase accordingly and the task is closed out; if not, the task remains visible on my nightly review until the motion is filed.

**<u>Resolved Cases Pending Full Execution</u>**

***Gap – Docket Not Uniformly Updated While Awaiting Execution of Settlement***

In a number of matters, a dismissal may not have been filed while a resolution was still being executed, because doing so before full execution could prejudice the client's ability to enforce the resolution if it was not ultimately honored. Filing a dismissal, particularly with prejudice, before a settlement is fully performed can forfeit the Court's jurisdiction to enforce the agreement. In addition, some defendants prefer that no Notice of Settlement be filed and that only a dismissal be filed once performance is complete. Under our prior system, however, once a case reached the resolution stage, there was no uniform task to inform the Court of resolution, whether through a Notice of Settlement or

otherwise. As a result, a case could sit on the docket in this pending-execution status until a further Court deadline passed and an OSC issued, even though the matter had already been substantively resolved.

***Correction – Resolved/Awaiting Execution Phase with Tracked Follow-Up***

Under our current system, once a matter is resolved but not yet fully executed, I confer with the defendant on whether a Notice of Settlement or Dismissal is preferred so that the case does not appear open and pending on the docket. Once conferral with defendant is complete, I will ensure that the proper task is created in our case management system. This ensures a resolved case does not sit without any docket update or any tracked follow-up date during the interval before dismissal.

**Miscellaneous Tasks Required by the Court Other Required Next Steps Not Uniformly Tasked**

At various points, a case required a specific next step beyond the routine sequence of service and response. For example, filing a request for summons following an amended complaint. Where that step was not built into a tracked task, it depended on independent recall and initiation, which did not occur uniformly. Our current system is built around defined litigation phases, so that a case-specific event triggers its own task for the required next step, rather than relying on independent recollection of what a given procedural posture requires.

**Additional Preventive Measures**

In addition to identifying and correcting the specific gaps described above, I will be conducting a case-by-case review of every open matter I have filed in this District prior to the implementation of our current system to confirm that each is fully incorporated into our current case management system and on track. I expect to complete this review by **August 3, 2026**. I believe that after that review, these issues will be resolved and any orders to show cause will be greatly reduced.

**ITEM 3: PRIOR ORDERS TO SHOW CAUSE RE SANCTIONS OR FOR LACK OF PROSECUTION**

***Scope of This Disclosure***

In preparing this declaration, I conducted a search on Lexis of the Central District of California docket for Orders to Show Cause re “lack of prosecution” or “sanctions” issued in cases in which I appear as counsel of record. Orders to Show Cause issued as a routine consequence of a filed Notice of Settlement, pending only the ministerial filing of dismissal papers, are not included, as they do not concern sanctions or lack of prosecution. The list attached as **Exhibit A** reflects the results of that search and my review of the underlying dockets. I have made a good-faith effort to identify and accurately describe each responsive matter; however, it’s possible that this search did not capture every

instance, and I will supplement this declaration promptly if I become aware of any additional responsive matter not reflected in Exhibit A.

***Summary of Disclosed Matters***

Exhibit A identifies 145 Orders to Show Cause re sanctions or lack of prosecution issued in cases I have filed in this District. Of these, one resulted in a monetary sanction: in *Andrew Davalos v. Ecommerce Innovations LLC*, Case No. 5:25-cv-01151, the Court imposed a $250 sanction against Plaintiff after a proof of service was filed but an accompanying motion for extension of time to serve was not; upon my filing of that motion, the Court vacated the sanction. No other matter identified in Exhibit A resulted in a monetary sanction.

The matters identified in Exhibit A fall predominantly into the following recurring categories, all of which corrections have been addressed in Item 2:

(a) matters in which a case was substantively resolved but the docket was not updated with a Notice of Settlement or dismissal before a further deadline passed;

(b) delays in effectuating or confirming service of process within the 90-day period;

(c) matters in which a default was entered but a motion for default judgment was not filed within the time I now target internally;

(d) matters in which entry of default was not requested despite a defendant's non-appearance; and

(e) matters involving extensions, stipulations, or amended pleadings that affected tracked deadlines.

I take seriously that this Court has now issued Orders to Show Cause, or noted the possibility of future sanctions. I have described in Item 2 above the specific gaps that gave rise to these matters and the corrective measures I have implemented, and I am committed to ensuring that the corrective measures described above prevent recurrence of these issues in matters before this Court specifically, as well as throughout my practice in this District.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 20, 2026

Respectfully Submitted,

/s/ Gerald D. Lane, Jr.

**GERALD D. LANE, JR., ESQ.**
California Bar No.: 352470
E-mail: gerald@jibraellaw.com
The Law Offices of Jibrael S. Hindi
1515 NE 26th Street
Wilton Manors, FL 33305
Phone: (754) 444-7539

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 20, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Gerald D. Lane, Jr.
GERALD D. LANE, JR., ESQ.
California Bar No.: 352470